Council may begin whenever you're ready. Good morning. May it please the Court, my name is Lisa Powell for the U.S. Office of Special Counsel. As amicus to address administrative exhaustion, I'll take five minutes and Mr. Johnen's attorney will address the remaining issues his petition raises. Federal employee whistleblowers have a statutory right to bring de novo claims to the Merit Systems Protection Board if they meet the minimum threshold requirements for exhaustion before OSC. Restricting that right is contrary to the statute, congressional intent, and it harms whistleblowers, the large majority of whom... So you're suggesting that restricting the right is suggesting that the complainant has to say more than one phrase, a sentence in the middle of his complaint that doesn't refer to that particular, if you will, situation only with a one sentence that Hamlin, Bacoteur, and Kelnon failed to address the nepotism they were very well aware of, which I repeatedly complained about because it would have a serious impact on my duties and those of my subordinates. So in the middle of that complaint, which I read pretty carefully, we had one sentence, I think you can, which would suggest that there's any way to exhaust claim two. His complaint actually says nepotism four times, but more to the... I'm not talking about where, I mean, I read the complaint to try to find anything in there about claim two, and this was the only sentence I could find. I don't find anything that says he even complained to Hamlin, Bacoteur, and Kelnon. So... I don't find in there that verbal, these verbal complaints contributed to his discipline. I don't have anything in there that these complaints, I mean, even added to the doddic complaint, that these complaints and the doddic complaint contributed to his discipline. All I find is this one sentence, which doesn't say any more than this, and from this, it seems, that I'm limiting what the complainant can do if I force him to say more than that, so that he can give some opportunity to the OSC to do something about it. Under the statute, they must exhaust a claim of a prohibited personnel practice. I understand. Each separate improper personnel action might be a separate prohibited personnel practice, but each separate whistleblower disclosure or each separate theory of causality simply is not a separate claim. So federal employee whistleblowers, almost all of them are pro se before the OSC. It's very common to leave out disclosures entirely. It's very common to mislabel their claims. But OSC is investigating, not adjudicating. It's investigating a claim. That's what we're about. They're investigating. But if I'd read this complaint, I wouldn't have known what to investigate, as it relates to anybody except as to the doddic complaint. Right. I think any OSC attorney who does these for a living and is used to reading pro se complaints. Just a minute. You're automatically suggesting that what is being argued by the other side, they're not up to snuff. I mean, what I'm trying to do is read this and say, is there anything in here that they complained to these people? Is there anything in here that these verbal complaints contributed to his discipline? Is there anything in here that says the complaints and the doddic complaint contributed to his discipline? There's nothing. There's nothing to give some notice for the OSC to go off and do some investigation. It's common for OSC complainants to leave out disclosures, to mislabel their complaints, to focus on formal complaints. They often don't realize that informal and internal complaints are protected under the statute. So all we've got to do is say, well, I know about one doddic complaint and everything else. You've got to go and investigate this, and that can be added as you investigate? That's your argument? Exhaustion has to be a fact-specific inquiry made on a case-by-case basis. But the important point here is that it must be made under the correct legal standard, which is, does OSC have a sufficient basis to investigate? OSC complainants shouldn't be required to separately exhaust every whistleblower disclosure or every theory of causation. They need to read. If they have one whistleblower disclosure, then automatically the OSC should be charged with investigating every possible whistleblower disclosure, whether mentioned in the complaint or not. That's your argument? Well, certainly if he had submitted the same complaint and then pursued an IRA based on a claim of OSHA violation, something totally distinct from his complaint. I'm not talking about OSHA. You didn't even hear my question. I didn't say that. I said you're suggesting that if they have one complaint on a whistleblower complaint, they don't talk about any other in their complaint, then OSC is charged with, since they made one complaint, doing investigation of every other possible complaint. I think the inquiry is whether OSC, given the statutory investigative tools it has and the expertise it has, has a basis to investigate. So here you have on the face of the... So you're saying because we have a DOD IG complaint based on nepotism, they have a basis to investigate on any claim of nepotism that may come up during the investigation. Certainly where you have a complaint that says I made an IG complaint on nepotism and mentions at other points in the OSC complaint that they made internal disclosures of nepotism. But that isn't what it says. But that isn't what it says, Counselor. Once again, it says they failed to address the nepotism they were aware of. It doesn't say he even complained to them about it. It does. It says I repeatedly complained of nepotism. What it says, which I repeatedly complained about, but not to them. I believe it does list one of the subject, one of the agency officials, to whom the disclosure that's the focus of petitioner's complaint. Well, I guess you want to read this sentence again. I'm glad to let you read it. I mean, I read this very well aware of, okay, they may be there, which I repeatedly complained about, but it doesn't say to these people. The DIG could be that complaining about. So the protection under the Whistleblower Protection Act for disclosures is extremely broad. It includes informal disclosures. It includes disclosures within the chain of command. It excludes oral disclosure. It includes oral disclosure. So to an OSC attorney looking at that complaint, if you read, I repeatedly complained about nepotism, that on the face of it would appear to be a protected disclosure under the Whistleblower Protection Act. So because I'm not an OSC attorney, I don't know it, but they would all know? Is that your argument? I think you have to look to what OSC does and whether it has a sufficient basis to investigate a particular claim. And it's always going to be a fact-specific case-by-case inquiry, but certainly where the complaint states I made, even if they mislabel their theory of causality, that's very common, even if they leave out specific disclosures, they're required to exhaust the prohibited personnel practice. And that is a claim that a particular personnel action here, a termination, was made in violation of the Whistleblower Protection Act. So you look to the complaint, you would see disclosures that appear to be protected, and you would investigate the underlying reason for the personnel action. And we would never limit ourselves to the petitioner's theory of causality. It's very common for their theory of causality or their disclosures not to – And at Puddingforth Complaints, we understand how to take what we are given and line it up with the statute that we work under. Do you want to give your co-counsel some time? Sure. Thank you. Good morning, Your Honors. May it please the Court. Wendy Musell on behalf of Michael Jonan. I did want to very briefly answer your question very directly and briefly. For the statement for which I repeatedly complained about, any investigation would be one question. What do you mean for which I repeatedly complained about? What complaints? One question. Very straightforward. And in that answer, he would either indicate to the OSC investigator, I complained internally to X, Y, and Z, or he would say, I only complained to the IGs. So it's actually, to answer your question very briefly, it's a one question to Mr. Jonan. It would be one of the first questions I'm sure the OSC investigator would ask. And he would indicate whether or not these were internal or solely external complaints. He does indicate, if you look through the OSC submittals, that he had complained to the IGs, yes, and also raised other issues regarding perjury and nepotism in the workplace. So I think it is fairly within the document. It also, if you look at how Title VII and other remedial statutes that are similar to the Whistleblower Protection Enhancement Act, it takes into account that 96% of the folks who make these complaints at the administrative stage are simply going online, they're clicking the button that says make a complaint. It does not give notice to the layperson that they need to indicate exactly to whom, exactly when, and to submit evidence. It's very dangerous to, I think, the safety of this country, but also to whistleblower protection in general to say you need to have all of your internal, external disclosures and all of your evidence to support that. So I'll leave that piece unless there's other questions and move on to the standard of review. The standard of review here, at least for the issues of jurisdiction for which there are three issues, the July 25th, 2013 meeting, the barment of petitioner, additionally the e-mail of August 15th and the 14th of 2013, those were all issues regarding jurisdiction. Those are de novo review. For the remainder of the issues, the statute ---- We are recently given the authority to decide these appeals, which all used to be centralized in Washington, D.C. From your point of view, is there any reason for us to chart new territory or depart from the standards that previously were applied in the Federal Circuit? Well, yes. I think that the ---- Just the basic legal principles where, you know, what things are reviewed de novo, what things, what the standard of review is, that sort of stuff. I think the Federal Circuit actually agrees that it's de novo review for jurisdictional matters. I understand that. I'm asking you to just take a step back. Sure. We have to adopt, because we have no Ninth Circuit law, on how these things are reviewed. Some other circuits have just said, well, the Federal Circuit's done a good job of laying out the framework. Do you disagree with that? I think it depends on which issue, Your Honor. So, for example, if it's the standard of review, the statute states what that is, under 5 U.S.C. 7703C. Okay. What specifically do you want us to do in terms of legal principles, basic legal principles, having nothing to do with the facts of this case? In what respects would you ask us to chart a different course, in other words, not agree with the standards applied by the Federal Circuit? Well, the Federal Circuit, as far as I'm aware, in the issue of whether former employees, if there's retaliation after the cessation of employment, they haven't actually squarely addressed that, except in one case. And they didn't address it as specifically as we are asking you to do here. That was the Kerrigan v. the MSPB case. Okay. Is there any other respect in which you disagree with their basic jurisprudence? As it relates to the standard of review, which is stated in, again, 5 U.S.C. 7703, there are different decisions for which the Federal Circuit articulates it differently. So I think that the Federal Circuit, when it referred to 7703 for the standard of review, was absolutely correct. Where I think the Ninth Circuit should depart from certain Federal decisions would be where they add a layering effect to increase that burden or standard of review, because the statute says what the statute says. And in that regard, I don't think we'd be creating any sort of split in the circuits. We'd rather would be agreeing with certain Federal Circuit decisions that I think were rightly decided. Many of these issues, as Your Honors know, are cases of first impression in the Ninth Circuit, and that does include the standard of review, what exhaustion is required under the OSC. And the third issue, which is an issue of first impression in both – I realize I'm over time, if I may finish answering the question. Yes, finish the answer. Thank you. The third issue is the issue of how, when you have a personnel action that flows from the adverse employment action, and here it's the barment two days later, where the reason given by the Army was that it was because he was fired. Later they said they had no reason at all, but at least initially they said it was because of the firing. Where you have a retaliatory adverse action that flows from the adverse employment action, that's also a case in first impression, both with the Federal Circuit and the Ninth Circuit. And I would submit that the language, the plain language of the Opposable Law of Protection and Enhancement Act with former employees would cover that. Additionally, it's the same standard that is utilized under Title VII case law where when they made that determination, they simply had the language of former employees, which is what you have here in the statute. Thank you, counsel. We'll give you two minutes for rebuttal since we used a lot of question time. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Jimmy McBurney on behalf of the United States and the Department of the Army. And I want to say from the outset I am prepared to discuss any of the issues in this case, but I want to make sure that I focus on addressing any concerns the Court might have with regards to the merits portion in light of the fact that I'm sharing time with counsel for the Merit Systems Protection Board, who will be speaking exclusively to the jurisdictional topic. So with regards to the merits issues, and I'm not sure how many concerns there are because there wasn't a lot of time spent talking about it during Petitioner's argument, but the merits issue really is a straightforward matter of did the administrative judge and thereby the board abuse any discretion in weighing the evidence. And in this case, the evidence is clear that the answer is no. Counsel, do you have any areas in which you disagree with the basic framework laid out by the Federal Circuit in terms of standards of review or what we ought to do in a case like this? No, Your Honor. Not at all. Our view is that the Ninth Circuit should apply the Federal Circuit law in this case. There's no reason to create any sort of divergence. Well, we would have to adopt it because, right. Adopt. I'm sorry, Your Honor. That's correct. And I was encouraged, actually, to hear from both Petitioner and the Office of Special Counsel. It doesn't appear that there's a desire to create any circuit split by anyone in this room, and we certainly agree with that, that the Federal Circuit law is appropriate in these cases and should be adopted in full by the Ninth Circuit. With regards to the merits decision, it was largely based on credibility determinations. Both this Court and the Federal Circuit have held that those are within the very sound discretion of the administrative judge. We see no reason to disturb those. We find that the record in this case adequately supports the merits determination that was made by the Board in assistance. The other issue that was raised in the briefs with regards to the merits was the issue of the exclusion of certain evidence. And once again, exclusion of evidence is something that is well within the sound discretion of the Board. In this case, evidence was excluded because it was entirely irrelevant to the issue the Court was looking at, which was, was there any sort of retaliation as a result of the October 2012 Inspector General complaint? And so we don't see any error of law there as well. And so unless Your Honor have any questions about the merits portion of the decision, I just want to answer a couple of things that were raised with regards to jurisdiction. And two points that I really want to point out. Number one, something was said with regards to when you're dealing with a prohibited personnel practice, the prohibited personnel practice is the action taken against the employee, in this case the termination and the barment, but the disclosures are not themselves the issue, and so you can have multiple disclosures that aren't properly identified. And that's simply incorrect. A prohibited personnel practice is not the equivalent of a personnel action. And so you need to have two elements in the context of this case. You need a prohibited disclosure, and then you need a personnel action that is a result of that disclosure. If you don't have the disclosure, otherwise you just have an entirely permissible termination. Right. I have to say, and it may be your colleague who answers this, but I read this complaint quite differently than apparently Judge Smith does. It looks to me like about, oh, maybe a quarter of the entire text is about nepotism, because it goes on after saying that these three individuals failed to address the nepotism that they were very well aware of, which I had repeatedly complained about because it was having a very serious impact on my duties and those of my subordinates. It goes on to say, you know, so-and-so condoned it, and he was appointed to investigate it, but he conducted a biased and one-sided investigation, knowing full well, both in his position, I'm sort of paraphrasing, and his personal involvement with nepotism, that the other accusations were, you know, false and that it was an unwarranted attack, and it keeps going to talk about who committed the prohibited practices regarding nepotism. So there's like a whole section of this about nepotism. Why isn't that sufficient? And I expect that counsel from the MSPB will have a lot to say about that. My response would be this. I think there's a very important sentence at ER-427 in the Board's decision, which is, the key issue regarding the contributing factor element of the appellant's IRA appeal is whether MH was aware of the appellant's disclosure, not whether he was aware of the wrongdoing that was the subject of the disclosure. And so in this instance, I think we really have to separate out the disclosure and the correctness. Sotomayor, he said, he said, I told them several times, why isn't that a statement that there's a disclosure that at least needs to be investigated? Well, so the issue then is, was the disclosure what resulted in the retaliation? And here, we need to know. We can't know that until there's an investigation, can we? Sometimes that may be the case. But what's important is looking at the complaint and figuring out, how would OSC have been expected to look at that, and what did they think they had to look at? Well, they would say he repeatedly complained. I think fairly, to my way of reading, he says, three people failed to address the nepotism that they were aware of, and which I had repeatedly complained about. I read that as saying, I complained to those three people. Now, that may not be, in fact, what happened. But it's certainly, on first reading, how I would interpret that. And so why wouldn't you say, okay, tell me about your complaints to A, B, and C about nepotism? When did you say it? You know, tell me more about that. So two issues with that. Number one, I think it's important to look at the context of where that sentence appears. And what he appears to be describing is the background that went into filing his Inspector General report and the issues that were addressed in that report. And that's one way to read it, but that seems like a very narrow, you know, and ungenerous way to read it, because, as I say, to me, it looks like there's about a quarter of this there, 20 percent of it, that's all in this chunk about nepotism and his complaints about nepotism. Right. And I think the problem is just saying, well, I complained about nepotism, particularly in a context like this, where it's all in the context of this 2012 complaint. The problem is, when OSC is looking at this, they're going to say, okay, there was an Inspector General complaint filed. It addressed nepotism. There's a lot of discussion of what went into that complaint and what was complained  And so the first problem is, allowing that to be sufficient to exhaust any disclosures about nepotism at any time? No, well, it's prior to his termination to these three individuals, what were his specific complaints to them and when did he make them? That isn't very hard. I think the problem also, Your Honor, is we're not dealing with a situation where plaintiff is arguing it was error to find that he had failed to exhaust complaints made to these three individuals that you identified in that portion of the complaint. I think there would be a problem if that was the argument as well, but that might be a closer call. Here he's saying it was error to exclude, on the basis of exhaustion, allegations apparently made to Ms. Williams in the presence of Mr. Hamlin, and that is simply logically inconsistent with what's in the complaint. Number one, Ms. Williams is not mentioned anywhere on the complaint. The complaint was supposedly made to her in the presence of Mr. Hamlin, and yet she's not even mentioned. What's mentioned is a complaint at some point in time, or multiple complaints, it's not clear, made to three different individuals, and that certainly seems to be a different complaint. Yes, but if they had asked those individuals, one of whom was present at the meeting that you're talking about, they would have found that out and could have dealt with it on the merits easily. Well, possibly, possibly not. I think in this instance they probably would not have found it out because they would have gone in asking about the Inspector General complaint, asking specific questions relating to what went into that complaint, which would have led them to. Yes, and they could have easily just asked the question that opposing counsel said, well, you talked about repeatedly complaining. When did that happen? To whom? Right. And the other thing that I would say is, although I think what's important is to look at the text of the complaint and say, is this something that we reasonably put OSC on notice of what they need to look at? And the answer is not only no. We know as a matter of fact that when OSC looked at this, their determination was, as a matter of fact, they viewed it as only looking at the Inspector General report. I know this. I guess I'm, I want my chance to just ask you. My question really was, given what I'm not supposed to limit these allegations, how far do I go in making them specific or how far I don't? And I've tried to find the cases to make it that way. And I appreciate that Judge Graber has already spoken to me as to how I feel on that issue. I'm not sure I do. What bothered me was how counsel led me down the road to where she led me. Because you adequately suggested that this person to whom they now want to make the complaint about, the General, isn't even among the group. But the bottom line is, how do I decide what limitations to make? Because I've read what's happened in the Federal Circuit. I've read what I'm supposed to do. That's why Judge Graber's question about do I just follow what the Federal Circuit suggests or do I not follow? That's the ultimate question for me. What limitations? Because it seems to me that if I'm looking at an EEOC complaint, I can, I have many times argued that they didn't make that particular complaint to the EEOC and it wasn't exhausted and I've won. But I don't know how to do it in this particular matter because I've never looked at it before. And that's what I'd like your help with. Sure. And I think there's an important distinction when you're dealing with EEOC complaints where you tend to be dealing with discrimination more broadly. And a statute such as this one where what's really required to have the prohibited personnel practice is both a protected disclosure and an action that flows from that disclosure. And to look at that, I think as this Court even acknowledged in Daniels v. MSPB, even to make the threshold inquiry into whether the plaintiff has made a non-frivolous allegation of a protected disclosure, you need to know what that disclosure is. And then certainly to determine whether that disclosure, if it exists, is a contributing factor, then you really need to know what the disclosure is. And so I think that's why it's important. You need to have some specificity and the ward standard is correct, enough to put, you know, reasonable grounds to lead to an investigation that will get to the bottom of it. And again, in this instance, notwithstanding the arguments that any OSC counsel would look at this and know to look for more, the letter from OSC made clear they read it the same way that certainly that I did and I hope that perhaps you did, I expect so, which is this is talking about an Inspector General report, and that's all. Roberts. Well, counsel, I mean, and I know we have to look at the specific facts of this case, but I'm curious. How common or unusual is it that the Office of Special Counsel comes in as an amicus to support Petitioner on these types of exhaustion issues? Is that unusual or common? I'm not entirely sure how to answer that. To my understanding, it's not particularly common, but I'm not sure that that would be particularly informative either. In terms of their standards for when they come in and when they don't, that's probably beyond what I'm able to speak to. We'll hear from your colleague, I think, briefly. Thank you, Your Honor. Good morning. May it please the Court. Stephen Fung for the Mayor's Citizen Protection Board. Briefly, I'd like to raise two points that I think might inform this Court's consideration of the issues. First, as raised by my friend at OSC, she stated that disclosures are identified essentially by subject matter. That a disclosure of nepotism is just always a disclosure of nepotism and that it's the action that's a prohibited personnel practice. That's not supported by the plain language of the statute, which represents a disclosure as a communication. So a communication made in October 2012 about nepotism in an IG complaint is a separate disclosure than a communication made in July 2013 to General Williams about nepotism. What he identified in the OSC complaint was that he believed he was fired for the disclosure made in October 2012. That's a separate theory than that he was fired for complaining about nepotism in July 2013. The other point I'd like to raise, and I understand I'm already almost out of That's not correct. It's a two-question inquiry and it's a second question that's more essential. It's not just that, what do you mean by repeated? It's, do you think you were fired because of your other complaints of nepotism outside of your IG complaints? But that second question, it's outside of OSC's role. OSC's role is not to just look at every prohibited personnel or every personnel action and determine, is there some disclosure that led to this prohibited personnel action that makes it a prohibited personnel practice? OSC's role is to receive specific allegations of whistleblower appraisal, which is, A, I made a disclosure, and B, I was fired for that disclosure. So it's not just identifying, what do you mean by repeated complaints? It's identifying also that you believed you were fired for a complaint outside of the IG complaint. And as my colleague pointed out, when you read the entire complaint objectively, it does not look like he's raising any other allegation that he was fired for any complaint of nepotism outside of the IG complaint. To answer Judge Simon's question briefly, and I'm sure my colleague or my friend at OSC would say the same thing, it's happening more often. OSC's amicus authority was only granted to them in 2012, and they, I believe, three or four times in the last year have filed amicus briefs. That's not an official number, but off of recollection. Does that reflect an emerging difference of how much or how specific the complaints need to be, a difference between the OSC and the American Protections Board? It may reflect a difference between current policy of OSC, but what's important and what my friend at OSC did not mention is that OSC actually has regulations on what is required in an OSC complaint, and they're far more than what they represented to this court. OSC's regulations, which are at 5 CFR 1800.1, requires a precise date of the disclosure, precise individual to whom the disclosure is made, and precise date of the personnel action listed. None of those are included in this OSC complaint. You're out of time, but you may sum up briefly if you wish. Yes. So just for the reasons we stated in our brief that we did not argue here, we would request that you dismiss us as a respondent in this matter based on the language of 7703, but also affirm our claim or affirm our decision that the petitioner failed to exhaust his administrative remedies, that he was fired and barred from 1400. Are those inconsistent? If you're not a proper defendant, I guess we don't, we affirm based on something else if you're not a proper defendant or a proper respondent here. Even if we were not a proper respondent, the government would still be making the same argument. Right. They were. They were. We would still be asking that you affirm the decision that the board did not have jurisdiction over the claim that he exhausted his July 2013 complaint. Thank you, counsel. Thank you. You have two minutes for rebuttal. Thank you, Your Honors. Doubts are resolved in favor of finding a jurisdiction. It's a motion to dismiss standard. It's permissive standard. I also wanted to, in responding to are we in keeping with circuit law or not, the McCarthy case, which is a Federal Circuit 2016 case, did use the standard that we are urging here, which is reasonable clarity and precision, sufficient basis to pursue an investigation to lead to corrective action. So we're not asking for something that a recent Federal Circuit has not already determined. I think that Your Honor has hit the nail on the head when you had indicated that 20% of the complaint indicated issues of nepotism and had indicated that there were repeated such complaints, and he also raised the fact that he was fired and barred. I think he did provide reasonable clarity and precision. In terms of the July 25th communication, Hamlin was in the room. That communication was also made to him. He was specifically named. Regarding, very briefly, the issues of credibility, the Army indicates as their standard that they would be virtually unreviewable. Well, that is just contrary to 5 U.S.C. 7703. If you look also at the Whitmore case, which is a seminal case in the Federal Circuit, it discusses that you must look at the evidence in the aggregate and all of the information must be determined, meaning you simply don't accept at face value a credibility determination made by a judge. You look at the other evidence to determine whether that was reasonable or not in conformance with 7703. In terms of the OSC closure letter, OSC closure letters are not considered findings of fact as a matter of law. I'd be happy to answer any other questions. I don't think we have any more at the moment. Thank you very much. The case just argued is submitted, and we appreciate the helpful arguments from all four counsel.
judges: Graber, N.R. Smith, Simon